UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|                 Plaintiff, ) | |
| ) | |
| vs. ) | No. 04 CR 40080 |
| ) | Judge Joe Billy McDade |
| JOHNNY DESILVA Jr., ) | |
|                 Defendant. ) | |

**MOTION TO REDUCE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

Defendant, Johnny Desilva Jr., through his counsel, Renee Woodward, respectfully moves this Court for modification of his sentence pursuant to 18 U.S.C. §3581(c)(1)(A).

I. **Introduction**

Compassionate release is warranted in this case. Mr. Desilva was initially sentenced on February 3, 2006, and was resentenced on April 7, 2017 to 324 months on Count 1, 36 months on Count 2, 240 months on Counts 4 and 5, all to run concurrently, 120 months on Count 3 to run consecutive to Counts 1, 2, 4 and 5. He is set to be released on June 21, 2037.

Mr. Desilva currently resides at the Federal Correction Institution Elkton ("FCI Elkton"). FCI Elkton is a hotbed of COVID-19 within the federal prison system, and unfortunately Mr. Desilva tested positive for COVID-19 on April 2, 2020. Mr. Desilva, due a number of underlying health conditions, suffered great harm from COVID-19, and ended up intubated for 15 days. He continues to struggle with health issues related to COVID-19. On top of all of this, he potentially could get re-infected. See, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last updated May 12, 2020) ("The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Patients with MERS-CoV are unlikely to be re-infected

1

shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with COVID-19.") Under these circumstance, Mr. Desilva respectfully suggests there are extraordinary and compelling reasons to receive compassionate release.

**II. Administrative Remedies**

Mr. Desilva requested compassionate release from the warden at FCI Elkton on or about May 3, 2020. On or about May 22, 2020, Mr. Desilva again requested compassionate release in light of a court order in 20 cv 794. The order is attached hereto as Exhibit A[1]. 20 cv 794 is a class action lawsuit involving inmates at FCI-Elkton, and the order required that anyone in the subclass, which Mr. Desilva is a member[2], who petitions for compassionate release must have that petition adjudicated within 7 days[3]. Ex. A at 9. There has been no denial of the first request, but Mr. Desilva received the denial of his second request on June 1, 2020, with the denial dated May 27, 2020. Due to lockdown conditions at FCI Elkton, counsel has not received a copy of the denial.

The exhaustion requirement of §3582(c)(1)(a) states that:

> "the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)"

---

[1] The order is from Craig Wilson, et. al. vs. Mark Williams, et. al., 20-cv-00794, in the United States District Court for the Northern District of Ohio, dated May 19, 2020, docket #85 in that case.

[2] This is significant as it means FCI Elkton considers Mr. Desilva to be part of a medically vulnerable class within FCI Elkton.

In this case, Mr. Desilva first requested compassionate release over 30 days ago, further his second request was denied. As such, he exhausted his administrative remedies and is eligible to proceed before this Court.

**III. Mr. Desilva's Condition Constitutes an Extraordinary and Compelling Reason to Grant Compassionate Release**

The First Step Act empowers a sentencing court to make an independent determination of whether there are "extraordinary and compelling reasons" for compassionate release. A court is no longer required to defer to the Bureau of Prison's determination of whether such circumstances exist. *See, e.g.*, *United States v. Cantu*, 426 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (vesting BOP with authority to determine whether extraordinary and compelling reasons are present "no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court"); *United States v. Ebbers*, --- F. Supp. 3d ---, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts.").

The United States Sentencing Commission envisaged that "extraordinary and compelling reasons exist under any of the circumstances set forth below": (A) medical condition of the defendant; (B) the age of the defendant; (C) the family circumstances of the defendant; and (D) other reasons as determined by the BOP. U.S.S.G. §1B1.3, Application Note 2. Based on this, Mr. Desilva has extraordinary and compelling reasons due to his medical conditions and the ongoing situation at FCI Elkton.

At this point, it cannot be disputed that COVID-19 spread rapidly within FCI-Elkin, and this was caused in part by a lack of swift action by the BOP. On or about March 22, 2020, the Director of the Ohio Department of Health issued a Stay at Home Order in keeping with CDC

guidelines in order to slow the spread of COVID-19. At the same time, FCI Elkton, located in Ohio, did not follow the same CDC guidelines and COV-19 began to spread like wildfire inside the prison.

The spread of COVID-19 at FCI Elkton unfortunately affected Mr. Desilva. On April 2, 2020, after having shortness of breath, fever, and cough for one week and with his symptoms progressively worsening, Mr. Desilva was admitted into the East Liverpool City Hospital in East Liverpool, Ohio. He tested positive for COVID-19, and was immediately intubated.[4] Ex. B at 27. He remained intubations for 15 days, and during that time suffered a myriad of issues, including kidney and respiratory failure. Ex. B at 1. His grave condition was due in part to his underlying health conditions. These conditions include chronic severe obesity, diabetes and hypertension. Ex. B at 27. He is lucky to be alive – his condition put him close to death.[5]

Now on top of chronic severe obesity, diabetes and hypertension, he suffers from additional issues, including but not limited to the following: suggestive congestive heart failure, and swelling in his lower leg/foot. Ex. B at 1.

---

[4] Mr. Desilva's medical records are attached hereto as Exhibit B. Counsel received voluminous medical records in this matter, and this is only a fraction of what is available. Counsel can supplement the record with additional medical records if required.

[5] See https://www.propublica.org/article/ventilators-arent-going-to-cure-covid-19-heres-what-they-can-do ("New York University Langone Health has also reported results from 4,103 coronavirus patients, of which nearly half were hospitalized and 445, or nearly 11%, needed a ventilator. The paper, which is available as a preprint — that means it hasn't yet been peer-reviewed but has been posted online while it awaits journal publication — shows that among the patients who needed a ventilator, 16 were discharged at the time of publication, 22 were able to come off a ventilator but were still in the hospital, 162 had died or were in hospice and 245 — just over half — were still on a ventilator.")

Dr. Raymond Scalettar, a Clinical Professor Emeritus of Medicine George Washington University School of Medicine and Health Sciences, Past Chair of the American Medical Association Board of Trustees, and a medical consultant to the Compassionate Release Clearinghouse, reviewed some of the more recent medical records of Mr. Desilva[6], and gave the following opinion on the matter. "The CDC Guidelines state that those who have Covid 19 are at higher risk for severe illness. The Guidelines do not address those who have had Covid 19. It is my medical opinion that the patient has the risk factors that meet the criteria enumerated by the CDC and should be considered for Compassionate Release:

> 1. the presence of morbid obesity with a BMI of 43.
>
> 2. He may have a serious heart condition with the suggestion of Congestive Heart Failure.
>
> 3. Although he is now off the ventilator his pulse oximetry recordings are as low as 90 so he may have residual pulmonary insufficiency.
>
> 4. He was in renal failure and had to be dialyzed. However, his kidney function now is normal."

Furthermore, as to his Mr. Desilva's positive COVID-19 test, possible protection via antibodies, and the risk factors, Dr. Scaletter found that "the CDC has stated, we do not know if the antibodies that result from SARS-CoV-2 infection will provide someone with protection (immunity). If antibodies do provide immunity, we do not know how much antibody protective or how long protection might last. Therefore, I think if a patient was at high risk as result of his underlying conditions, he remains at high risk."

---

[6] The attached documents filed as Exhibit B.

The hospital that treated Mr. Desilva also agrees that he could be exposed again. Dr. Peter Apicella, with the Salem Regional Medical Center, wrote on May 20, 2020, that "I was informed by Hospital management that due to patient being reintroduced to the general population at prison where he could've been exposed to COVID 19; patient will require being re-swabbed despite already covering from this viral illness". Ex. B at 1.

Again, Mr. Desilva is housed at FCI-Elkton. At one point, one out of every four Elkton inmates have tested positive for COVID-19. Ex. A at 7. As of June 3, 2020, FCI Elkton had 424 confirmed active cases with inmates and 7 staff have tested positive for COVID-19[7]. By comparison, on or around May 19, 2020, 135 inmates had tested positive. According to the BOP – below is a breakdown of the cases for FCI Elkton as of June 3, 2020[8].

| Facility | Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered | City | State |
|---|---|---|---|---|---|---|---|---|
| Forrest City Low FCI | 471 | 1 | 0 | 0 | 111 | 3 | Forrest City | AR |
| Elkton FCI | 424 | 7 | 9 | 0 | 148 | 46 | Lisbon | OH |
| Butner Low FCI | 367 | 6 | 6 | 1 | 45 | 6 | Butner | NC |
| Oakdale I FCI | 99 | 9 | 7 | 0 | 86 | 10 | Oakdale | LA |
| Lexington FMC | 78 | 5 | 4 | 0 | 190 | 5 | Lexington | KY |
| Dismas Charities Albuquerque (RRC) | 54 | 0 | 0 | 0 | 0 | 0 | Albuquerque | NM |

These numbers are concerning - Mr. Desilva is now in the precarious condition where he is recovering from COVID-19, has serious medical issues (some caused by COVID-19), and

---

[7] https://www.bop.gov/coronavirus/

[8] From https://www.bop.gov/coronavirus/  Note that the Inmate Positive number in the chart appears to be active cases. On June 2, 2020 - FCI Elkton listed 461 active cases in inmates.

could be exposed to COVID-19 again. Yet where he is being held continues to have a high number of positive cases. Again, he was at "high risk as result of his underlying conditions, he remains at high risk." With such high numbers and the care that Mr. Desilva requires (for diabetes, congestive heart failure, etc) – it has to be a concern given the current situation that FCI Elkton cannot provide the quality of care that Mr. Desilva requires. These are **extraordinary and compelling reasons for compassionate release.**

**IV. Mr. Desilva's Personal Circumstances Have Changed**

Mr. Desilva has been significantly punished and is not a danger to the community. He was found guilty of serious crimes, but he has served over 14 years of his sentence and during that he has changed. For one, his record in prison demonstrates that he is not a danger to the community. Additionally, the dangers of recidivism are greatly reduced due to his medical condition and age (he is 44). *see* United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, (Dec. 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

Especially telling of his current character is the prison assignment history of Mr. Desilva[9]. Ex. C at 2.

    2009: FCI-Terre Haute, high security correctional institution
    2014: FCI-Allenwood, high security correctional institution
    2015: FCI-Allenwood, medium security correctional institution
    2018: FCI-Elkton, low security correctional institution

In the course of over 12 years, he has gone from high security facility to low security one. If he was a danger, he would not have been moved from FCI-Terre Haute.

---

[9] Mr. Desilva's Summary Rentry Plan- Progress Report is attached hereto as Exhibit C.

According to the BOP: "He has made an overall satisfactory institutional adjustment. His interactions with staff and inmates is appropriate and there are no management concerns at this time." Ex. C at 3.  No disciplinary reports had been filed against Mr. DeSilva in the six months prior to date of the progress report, May 6, 2020. Ex. C at 2.

He has used his time in FCI-Elkton to his advantage.  While incarcerated he has taken over 25 courses.  Ex. C at 1-2. "His work assignments have included various orderly details, recreation, compound, correctional services, food service cook, education, and electric shop.  He has received satisfactory work ratings through his term of incarceration."  Ex. C at 1.

Furthermore, his poor health realistically forecloses the probability of recidivism or a risk to the community, and the fashioning of strict conditions of release could also mitigate any risk to the community.

**V. Release Plan**

If he is granted release Mr. Desilva would reside with his fiancée, Sonia Rodriguez at her home located in Illinois.  They plan on getting married, and then Mr. Desilva would be placed on Ms. Rodriquez's employer provided health insurance.  She would provide him with financial support and ensure he receives medical care. Additional information can be provided.

**VI. Conclusion**

Mr. Desilva was found guilty of very serious charges, but he has served over 14 years in custody and is a different man now. This Court has the authority to reduce Mr. Desilva's sentence. In light of Mr. Desilva's health and the ongoing COVID-19 Pandemic, this Court should exercise discretion granted to it and order him released, or in the alternative, order him released and require that he serve a portion of his sentence on home confinement.

                                                    Respectfully submitted,

                                                    */s/ Renee Woodward*
                                                    Renee Woodward

Renee Woodward
Woodward Law Office LLC
4256 N. Ravenswood, Suite 106
Chicago, IL 60613
(773) 242-9290
renee@woodwardlegal.com
Attorney for Defendant Johnny Desilva Jr.

**CERTIFICATE OF SERVICE**

I, Renee Woodward, hereby certify that June 6, 2020, I caused a copy of the foregoing document to be served upon all counsel of record for all parties that have appeared via the Court's CM/ECF System.

*/s/ Renee Woodward*
Renee Woodward


Renee Woodward
Woodward Law Office LLC
4256 N. Ravenswood, Suite 106
Chicago, IL 60613
(773) 242-9290
renee@woodwardlegal.com